Argued March 11, reversed April 12, rehearing denied May 17, 1921.

# SALQUIST *v.* OREGON FIRE RELIEF ASSN.

### (197 Pac. 312.)

**Insurance—Insurance Contract must be in Writing Under Statute.**

1. Section 6457, Or. L., forbidding the issuance or renewal of insurance policies which do not contain the conditions therein prescribed to be stated on page 2 of the policy, in effect requires the policy to be in writing, and prohibits oral contracts of insurance.

**Insurance—Authority of Agent Who Executed Renewal must be in Writing.**

2. The requirement of Section 6457, Or. L., that an insurance policy shall specify that in any matter relating to the insurance no person, unless duly authorized in writing, shall be deemed the agent of the company, a renewal of a valid existing policy made by an agent is not binding on the company, unless it is shown that the agent was authorized in writing to renew the insurance.

**Insurance—Answer Inadvertently Admitting Agency is not "Appointment in Writing."**

3. An answer by an insurance company admitting that the agent whom plaintiff alleged renewed her policy was authorized to solicit insurance for the company, which was subsequently withdrawn as having been filed under a wrong conception of the facts, is not the written authority of the agent to bind the company required by the statute.

**Insurance—Agent to Solicit has no Authority to Bind Company.**

4. Authority of an agent to solicit insurance confers no power upon the agent to write insurance which shall bind the company, especially where the policy which insured claimed the agent renewed stipulated that the liability of insurer should not commence until the application was approved by the home office.

**Insurance—Agency cannot be Proved by Holding Out.**

5. Under Section 6457, Or. L., requiring an agent to be authorized in writing to bind an insurance company, the authority of an agent cannot be proved by evidence that the company held him out as its agent.

**Insurance—Evidence of Renewal of Expired Policy Before Fire Occurred Held Insufficient to go to Jury.**

6. Where the written insurance policy had expired before the fire occurred, evidence that one who had been previously authorized to solicit insurance for the company had agreed to renew the policy when it expired, but that his agency had been terminated before the

---

1. Construction of clause in standard policy providing that insurance agent must have written authority, see note in Ann. Cas. 1912C, 367.

policy expired, and no new policy was ever issued, nor was the renewal premium paid, does not warrant the jury in finding that the company had renewed the policy, so that it was error to deny a motion for nonsuit.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 2.

It is admitted that the defendant at all the dates mentioned in the pleadings was and is a mutual fire insurance association, incorporated as such under the laws of Oregon and duly authorized to write fire insurance for its members only, in accordance with the mutual insurance laws of the State of Oregon. It is said in the complaint that before the commencement of the suit, for about eleven years, the defendant had maintained John Brown as its local agent at Gresham, to represent it in soliciting insurance and binding the defendant to "contracts of insurance" on property within the territory of the agency, during which period "plaintiff had made and entered into contracts of insurance with Brown as agent of the defendant"; that the defendant, through said agency, "issued a five year policy of insurance" and afterwards issued policy No. 178,862, attached to and made part of the complaint, and which by its terms expired January 27, 1918; that the plaintiff had no knowledge of the termination of Brown's agency and on November 20, 1917, believed that he had full power to make "contracts of fire insurance" on behalf of defendant. It is stated that on November 20, 1917, before the expiration of the three year policy No. 178,862, the defendant, through Brown, agreed to renew the same, and reinsure the property therein described from the date of the expiration of the policy already quoted; "that it was then and there agreed by and between plaintiff and defendant that defendant would write

and deliver to plaintiff a contract of insurance as evidence of the said *oral contract of insuranc*e, without anything further to be said or done on the part of plaintiff, the same to be in effect from and after January 27, 1918, at noon for a period of three years''; and ''that then and there, to wit, on or about November 20, 1917, the plaintiff accepted the terms of the aforesaid renewal of said contract and then and thereafter performed all the conditions of the said contract on her part to be performed.''

It is alleged that the property described was destroyed by fire on March 31, 1918, being at that time and at the time of making the renewal contract, the property of the plaintiff. Notification of loss is pleaded, as well as failure and neglect of the defendant to deliver the policy. The complaint avers that on January 15, 1918, the defendant revoked Brown's agency and on January 21st wrote the plaintiff that R. R. Quick was taking the place of Brown as its agent; that on January 26, 1918, the plaintiff went to Portland to pay her premium to Quick, but was unable to find him; that after the fire she tendered the premium to one Cleveland, who had been appointed agent of the defendant.

The former policy, which expired January 27, 1918, was of the standard form for mutual insurance companies and contained this provision:

''Section 8. In any matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of this company.

''This policy may, by renewal, be continued under the original stipulations, in consideration of premiums for the renewed term. * * *''

It is also said in the policy already mentioned that—

"Application for membership and insurance must be made upon such forms as the association may furnish, giving a complete description of the property to be insured, and signed by the applicant; and the liability of this association to the payment of losses by fire to any party shall not commence until such party's application for insurance and membership is received and approved by the home office, but this rule of liability may be varied by the agent in case of emergency, under instructions from the association."

The answer admits the issuance of the policy No. 178,862, expiring January 27, 1918. The remainder of the complaint is traversed. For its first separate answer the defendant pleads its by-laws to the effect that its liability shall not commence until the party's application for insurance and membership is received and approved by the home office, and states that the plaintiff never made any application, and none was ever received from her by the defendant. A second separate defense is to the effect that the plaintiff did not pay the premium, and that the by-laws provide that the association shall not be liable for any loss that may occur to property covered by a certificate upon which any premium is delinquent. There are other defenses not necessary to be considered. Those noted were traversed by the reply. A jury trial, at which the defendant unsuccessfully moved for nonsuit and offered no evidence, resulted in a verdict and judgment for the plaintiff. Certain objections to instructions and refusals to charge the jury are raised by the record. From a judgment for the plaintiff the defendant appeals.      REVERSED.

For appellant there was a brief over the name of *Messrs. Hewitt & Sox,* with an oral argument by *Mr. Henry H. Hewitt.*

For respondent there was a brief and an oral argument by *Mr. Milo C. King.*

BURNETT, C. J.—To sustain her allegations of the agency of Brown, the plaintiff offered, and over the objections of the defendant there was received, evidence of the acts and statements of Brown, but no writing creating his authority. The effort of the complaint is to recover upon an oral contract of insurance. Throughout the pleading the matter is spoken of as a "contract of insurance."

1. It is said in Section 6457, Or. L., that—

"From and after the first day of September, 1911, no fire insurance company, corporation or association, their officers or agents, shall make, issue, use, or deliver for use, any fire insurance policy, or renewal of any fire policy on property in this state, other than as shall conform to the following conditions, which conditions shall be contained upon page two of such policy of insurance and which shall form a portion of the contract between such insurer and insured, and which shall read as follows":

Then comes the schedule of conditions which are required to be made part of every policy; among others, those already quoted from the policy of which the policy sued upon was to be the renewal. Under this statute it could not be lawfully within the contemplation of the parties that any liability should inure against the defendant except upon a contract such as the law prescribes. In other words, requiring as it does, that any policy, whether original or a renewal, shall contain the statutory conditions, the enactment in question prescribes an exclusive evidence of contract, analogous to such enactments as the statute of frauds. Oral contracts of insurance are impossible under our statute.

2. It is argued that the requirements of the act specifying that "in any matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of this company," applied only to the former policy expiring January 27, 1918. The renewal of the insurance effected by the former policy was certainly a matter relating to that insurance, which in that view of the case would make effective the requirement of writing as a proof of agency. Conceding, but not admitting, that the condition in that policy related only to itself, yet any policy lawfully issued would require the same thing in obedience to the statute. The deduction is that, if anyone assuming to act for an insurance company in this state, undertakes to effect insurance, his authority to do so must be in writing. Ignorance of the law excuses no one. The statute in question by force of its terms is written into every policy issued or to be issued while the statute stands. No writing whatever conferring any authority upon Brown, upon whose conduct the plaintiff relies, was offered in evidence. At the trial, the plaintiff contented herself, over the objection and exception of the defendant, with offering the acts and declarations of Brown to charge the company. No evidence whatever was given that the defendant knew anything about the conduct of Brown.

3, 4. By an answer interposed in some former litigation of the dispute between the parties in this matter, the defendant admitted that Brown was authorized to solicit insurance. This, however, was explained by the attorney who drew the pleadings to have been inserted under a wrong conception of the facts, and was afterwards withdrawn by amendment. But this is not the writing contemplated by the stat-

ute, and even if it were, authority to solicit insurance confers no power upon the agent to write insurance to bind the company. Indeed, the very policy which the plaintiff had and which she sought to renew contains the provision that the liability of the association shall not commence ''until such party's application for insurance and membership is received and approved by the home office.'' It is true, the liability may be varied by the agent in cases of emergency, but then only ''under instructions from the association.'' No such instructions appear in the record.

5. It is argued that agency can be proved in such instances by the defendant's holding out the individual in question as its agent. This is directly in the face of the statute, which requires the agent's authority to appear in writing. Besides, there is no evidence whatever that the defendant held out Brown as its agent at the time he is said to have made the contract, or that at any time it held him out as authorized to do more than solicit applications to be forwarded to the home office for approval. As said by Mr. Justice RAMSEY, in *Oatman* v. *Bankers' Fire Relief Assn.,* 66 Or. 388 (133 Pac. 1183, 134 Pac. 1033):

''The rules relevant to questions of waiver prior to the enactment of the standard policy law do not apply now. So far as this statute is inconsistent with the common law, it supersedes it.

''It is the duty of the courts to give effect to the statute, and not to nullify its requirements. This statute not only imposes a penalty on insurance companies for noncompliance with its terms, but it declares in express terms that if the condition quoted, *supra,* is not complied with, the policy is void.''

Before the enactment of the standard policy law, the courts went to extremes in charging an insurance company upon the acts and declarations of anybody

who so much as had the smell of agency upon his
garments, however or whenever or for whatever ac-
quired.   But the statute has superseded such decisions
and has fixed a standard to which all must conform,
if they would impose liability upon an insurance con-
cern.   The extent of the authority of a mere solicitor
for business which must be confirmed at the home
office of a corporation is discussed by Mr. Justice
JOHNS, in *Bagot* v. *Inter-Mountain Milling Co.*, 100
Or. 127 (196 Pac. 824).   In the instant case there is
the express condition appearing in the record, that
liability shall not accrue until an application is re-
ceived and approved by the home office.

6. The plaintiff alleges that she performed her part
of the contract.   One of these requirements was to
pay the premium.   This she did not do.   She said
in her testimony that she offered to pay John Brown
two days before the expiration of the former policy,
when he told her that he was not the agent.   She
says, "I offered him the money and he said he was
no agent."   She says she went to the office of Quick,
another agent, some day in February, but did not
find him.   So far as that is concerned, the company
was not obliged to renew her insurance.   In the whole
record there is no situation disclosed where either
party could have sued the other, the defendant to
recover the premium, or the plaintiff to compel the
issuance of a policy.   All that the testimony discloses
is that there were negotiations irrespective of any
authority of the supposed agent, but which did not
culminate in an agreement.

The Circuit Court was in error in not allowing the
defendant's motion for a nonsuit.

The judgment is reversed.

REVERSED.   REHEARING DENIED.

BEAN, JOHNS and BROWN, JJ., concur.