E. K. CORRIGAN, RESPONDENT, v. NATIONAL MOTOR UNDERWRITERS, APPELLANT.[*]

Kansas City Court of Appeals.  January 3, 1928.

---

*Corpus Juris-Cyc. References: Insurance, 32CJ, section 209, p. 1113, n. 53; section 211, p. 1116, n. 92.

---

*Burns & White* for respondent.

*Dave Dabbs* and *Roscoe P. Conkling* for appellant.

ARNOLD, J.—This is an action to recover on a verbal contract of insurance. The cause was tried to the court and there was a finding

114

and judgment for plaintiff in the sum of $3133.28. After motions for a new trial and in arrest were overruled, defendant has appealed.

At the request of defendant, the court made a finding of facts which defendant adopts as the facts in the case for the purposes of this appeal. Plaintiff adopts said statement in part. In addition to the facts stated in the court's finding, plaintiff calls attention to the abstract of the record to the effect that A. J. Hagele who was the manager for the attorney-in-fact corporation, testified that after notice of the accident, out of which plaintiff's loss arose, he looked up the records to see whether a policy had been issued and found no record, but notwithstanding that fact, he offered a small settlement for the damages and employed an attorney to defend the action; that of the group of persons insured at the same time as plaintiff, they had received no written applications, but had paid some losses arising out of these risks. With this addition plaintiff adopts as his own the statement of facts reflected in the finding of the court. Such finding of facts is rather voluminous and we do not feel warranted in setting it out in full. The salient points therein are as follows:

"1. That defendant was a reciprocal association organized under the laws of Illinois and licensed in Missouri.

"2. That the defendant was engaged in the general business of writing liability insurance on automobiles.

"3. That E. O. Heim at the time in issue was general agent for the defendant and was furnished blank policies to fill in, issue and deliver; that he collected premium and received notice of losses and accepted risks of insurance.

"4. That in September, 1924, the defendant through the said agency orally agreed to insure the plaintiff over a period of time covering the date of the loss sued for.

"5. That the plaintiff paid the premium for the insurance.

"6. That the plaintiff had an accident with the insured automobile and injured a child.

"7. That the plaintiff notified the defendant of the accident.

"8. That the defendant's adjuster acting for the defendant investigated the loss, took charge of the case and notified plaintiff to have nothing to do with the case.

"9. That the plaintiff was sued and gave the petition and summons to the defendant and the defendant took charge of, and defended the case unsuccessfully and argued a motion for a new trial, which was overruled.

10. That after all the above, defendant for the first time denied any liability on account of said accident, suit, claim and injuries to said child.

"11. That the plaintiff then paid the judgment and settled the claim with the child's parents:

"12. That the plaintiff's total loss was $2999.80.

"13. That the defendant led plaintiff to believe that it was liable to plaintiff under the aforesaid oral contract of insurance.

"14. That the plaintiff was one of a class on which insurance was placed without written application to the defendant.

"15. That the defendant issued many policies without written application."

There is but one assignment of error, to-wit, that the court should have sustained defendant's demurrer to the evidence timely offered. This point is urged under two sub-headings, viz.: (1) The attorney-in-fact for subscribers at an inter-insurance exchange has no legal capacity to effect insurance except by a written contract (policy) based upon a written power of attorney (application) executed by the insured; that the terms "inter-insurance" and "reciprocal" insurance are synonymous; that only subscribers thereto can be insured and then only by executing a written power of attorney and being accepted by the attorney-in-fact by the issuance of a written policy; that the only relationship existing between the subscribers is simply one of private contract created by the power of attorney; all rights and obligations to each other are fixed by such contract. It is urged the relationship with the State is between the attorney in fact and the State; that the State, upon specific showing, grants the attorney in fact a franchise to operate the exchange upon compliance with the statutory requirements. Defendant cites sections 6374, 6375 and 6376, Revised Statutes 1919, in support of this general statement. An examination of the sections suggested shows that they are chiefly intended to authorize inter-indemnity contracts, defining the same and naming the requirements necessary to put such contracts into operation.

Defendant, in its brief, admits inability to find any decision determinative of the question as to whether an attorney-in-fact for subscribers at an inter-insurance exchange can go beyond the power expressly granted him by his respective principals and bind them by a contract different from that he is authorized to make. This argument of counsel is based upon the theory that an oral contract of insurance may not be legally entered into by defendant herein. Defendant admits that an oral contract of insurance may be made but not as applied to inter-indemnity contracts and cites two cases from foreign jurisdictions which it claims support this theory, to-wit: Schilbrek v. Casualty Co. (Wis.), 192 N. W. 456; Salquist v. Relief Assn. (Ore.), 197 Pac. 312, 100 Ore. 416. An examination of these cases shows they do not apply to the facts herein and are not a convincing basis upon which this case properly may be determined.

An oral contract of insurance is based upon a common-law right and would apply to the defendant association unless prohibited by

statute. There appears to be nothing in our statute to abrogate this common-law right. Section 6385, Revised Statutes 1919, cited by defendant, declares that no law of this State relating to insurance shall apply to such associations as the defendant. It is understood the term "law of this State" refers to statutory law and not to the common law, and there being nothing in our statutes forbidding oral insurance by the defendant and similar companies, it follows that the common-law right thus to contract orally still exists. It was held in Breckinridge v. Ins. Co., 87 Mo. 62:

"The powers of insurance agents are presumed to be co-extensive with the business entrusted to their care and are not to be narrowed by restrictions or limitations not communicated to the party dealing with him."

Also in Lingenfelter v. Ins. Co., 19 Mo. App. 252, the court said: "It is not essential to the validity of a contract of insurance that it should be evidenced by a written policy. A parol contract is sufficient. Insurance is simply a contract whereby one for a consideration undertakes to compensate another if he shall suffer loss. . . . The policy, in the absence of a contrary stipulation and understanding, during negotiations, is only evidence of the contract."

The law is well settled to the effect that a resident agent of a foreign insurance company may bind his principal by oral contract of insurance. [Murphy v. Ins. Co., 268 S. W. 671; State v. Revelle, 165 S. W. 1084.] The case last cited applies to reciprocal insurance. A parol contract may be binding on a corporation if made by it or by an authorized agent. [King v. Ins. Co., 195 Mo. 290, 92 S. W. 892.] Defendant insists that, in the case at bar, plaintiff presents at best only an oral contract to insure, and not a contract of insurance, but we fail to find any consolation for defendant in this situation, in the face of the holding of the Supreme Court in Baile v. Ins. Co., 73 Mo. 371, wherein it is said: "Both at common law and under the statute of this State a verbal agreement to insure is binding and in case of loss will be specifically enforced against the insurer."

The testimony of record herein shows that defendant's attorney-in-fact had sole and complete charge of its affairs; that he determined and accepted risks and made all contracts between the company and the insured. This being so, the public had no dealings with any other entity. Furthermore, there is no evidence of record herein showing the extent to which the attorney-in-fact was authorized to go.

Under its second subheading defendant insists that a contract binding an inter-insurance exchange cannot be brought into legal existence by a mere waiver; that the attorney-in-fact could do nothing by waiver that it had no legal capacity to do in an express contract. But, inasmuch as the trial court properly decided that the attorney-in-fact had the power to bind its principal in an oral contract of in-

surance and did so bind it, the question of waiver is out of the case. Defendant insists waiver was pleaded in the answer. Be it so, under our holding the situation is not changed and we need not discuss that point further.

Plaintiff insists there is no just reasonable ground for the appeal in this case and therefore asks the penalty authorized by sec. 1515, Revised Statutes 1919, be invoked against defendant. Under the facts of record we do not feel warranted in invoking the penalty as suggested and therefore hold against plaintiff on this point. We fail to find reversible error of record and accordingly the judgment is affirmed. *Bland, J.*, concurs in separate opinion; *Trimble, P. J.*, absent.

BLAND, J. (concurring.)—The form of written application, on file in the Insurance Department of this State, used by the defendant in writing policies of insurance, contains a form of power of attorney that reads as follows:

"I hereby designate the Equitable Underwriters Company, a Corporation, my Attorney-in-Fact, hereinafter called the Company, with power to appoint a substitute and deputies to exchange several inter-insurance contracts for me, but not joint contracts with the National Motor Underwriters, hereinafter called the Underwriters, in accordance with the laws of the State of Illinois providing indemnity against loss under any and all classes of automobile hazards of fire, theft, tornado, cyclone, collision, death, personal injury and property damage. The Company is hereby authorized to appoint the Director of Trade and Commerce of the State of Illinois to accept service of process in any suit or action brought upon any inter-insurance contract issued by the Company. The Company may adjust all losses and claims arising out of contracts so issued and may accept service of process and appear in suits, actions or proceedings thereon and bring, prosecute, defend, compromise, settle or adjust the same. The Company shall receive for its services hereunder an amount equal to twenty-five per cent of payments made by each policyholder. Each policyholder shall deposit with the Company a sufficient sum to pay for the insurance applied for. After deducting the compensation due the Company, the remainder of said premium shall be used for creating and maintaining reserves required by law for paying losses and for all other necessary expenses. Each policyholder hereby assumes as to any risk a liability of proportionate payment not exceeding an amount equal to the current annual premium deposit. The Company may act generally in the premises and on my behalf do all such acts and things in relation thereto as fully and effectually in all respects as I, myself, could do. This instrument may be altered or amended at any regular or special meeting of the National Motor Underwriters by a majority vote in person or by proxy.

"Note: Here follows description of Automobile.

"I have paid $...... required hereon, and agree that insurance applied for is not effective until Policy is issued and that the Company is not bound by any knowledge of or statement made to or by any agent or solicitor, unless written herein.

"Dated at ...... this ...... day of ...... 192....

"Witnessed by ................,.....

"Signature of Applicant ..........................

"Filed December 21, 1923."

It is insisted by the defendant that in view of the relationship between the various subscribers who signed applications containing a power of attorney like the one above set out, together with section 6376, Revised Statutes 1919, as amended (Laws of 1921, p. 409) there can be no oral contract of insurance by an attorney-in-fact of this kind; that the above power of attorney shows that the attorney-in-fact in this case was not empowered to enter into parol contracts of insurance and that the very nature of the relationship between the various subscribers requires a written contract. In this connection it is argued that the relationship between the subscribers is not that of a partnership, one subscriber being in no sense the agent for the others; that the personnel of the subscribers is always changing by the expiration of old contracts and the execution of new ones; that the relationship between the subscribers is that fixed by the power of attorney. In this connection it is insisted that the attorney-in-fact can have only such authority as is granted him by the power of attorney.

It will be noted that the power of attorney in the case at bar does not expressly prohibit the attorney-in-fact from making oral contracts of insurance. It has been held, under a similar arrangement, that the attorney-in-fact is given almost unlimited powers, as in this case, in reference to the risks to be written and, therefore, the public in dealing with it is warranted in treating the person (attorney-in-fact) held out by the underwriters (the subscribers) as their credited representative as a person possessing plenary power usually vested in such officers. [Ralli v. White, 47 N. Y. Supp. 197, 203, 204; Young v. Mfg. Co., 124 Ill. App. 94, 96; Ralli v. White, 46 N. Y. Supp. 376, 378.] In the case of Young v. Mfg. Co., supra, the court said, 1, c. 96, that prospective subscribers are not even bound at their peril to examine the power of attorney to ascertain what limitations of power, if any, are contained therein.

The statute relied upon by defendant (Laws of 1921, p. 409) provides that a copy of the form of the power of attorney and the form of the policy shall be filed with the Superintendent of Insurance and that the location of the office where "*such* contracts . . . are issued" must be set out in the declaration to be filed with the said superintendent. [See Laws of 1921, p. 409.] The Superintendent of

Insurance is given no authority to approve or disapprove the form of the power of attorney or the policy. However, the filing of these forms is no doubt required to furnish evidence to the Superintendent of Insurance, who must license reciprocal companies under the law (section 6383, R. S. 1919), that the character of insurance to be written is the kind mentioned in the statute.

We fail to see how a mere provision for the filing of a copy of the contract or policy with the Superintendent of Insurance can be construed as prohibiting an oral contract of insurance. See section 9753, Revised Statutes 1919, which, undoubtedly, applies in cases like this one where the attorney-in-fact is a corporation, also King v. Ins. Co., 195 Mo. 290, 301, 307; Baile v. Ins. Co., 73 Mo. 371, 381; Lea v. Ins. Co., 168 N. C. 479, 484, 485; Trustees, etc., v. Ins. Co., 19 N. Y. 305; Commercial Mut. Marine Ins. Co. v. Union Mut. Ins. Co., 19 Howard 318; Massachusetts Bonding & Ins. Co. v. Vance, 15 A. L. R. 981, 986, 989. In King v. Ins. Co., supra, l. c. 305, it is held that an oral contract of insurance is valid unless *expressly* prohibited by statute. The case of Salquist v. Oregon Fire Relief Ass'n, 100 Ore. 416, 420, involves a statute unlike the Missouri statute relied upon by defendant. The case of Schilbrek v. Casualty Co. (Wis.), 192 N. W. 456, cited by the defendant, is not in harmony with those that we have cited from our Supreme Court. In neither the Oregon nor the Wisconsin case was there a statute considered similar to our section 9753, Revised Statutes 1919.

A point is made that the position pleads an oral contract to insure in the future and not a contract of present insurance, but an examination of the petition discloses that this point is wholly without merit.

I concur in affirming the judgment.