JONES, Respondent, vs. PREFERRED ACCIDENT INSURANCE COMPANY OF NEW YORK, Appellant.

*October 13, 1937—January 11, 1938.*

424

*Timothy J. Hannan,* attorney, and *Marvin M. Fein* of counsel, both of Milwaukee, for the appellant.

For the respondent there were briefs by *Carbys & Wolf* of Milwaukee, attorneys, and *Ferris M. White* of River Falls of counsel, and oral argument by *Mr. White* and *Mr. Joseph A. Wolf.*

The following opinion was filed November 9, 1937:

FRITZ, J. The sole question on this appeal is whether it appears upon the face of the complaint that the accident insurance policy in question, issued to Frank W. Jones on

June 4, 1933, and subsequently renewed up to June 4, 1936, was in force when he was killed accidentally on July 29, 1936, although no premium for renewal after June 4, 1936, was paid until August 22, 1936. The plaintiff contends that it appears that the policy was in force at the time of the insured's injury because of allegations in the complaint that it was the custom of the defendant over a long period of time prior to the due date of the last premium to extend credit to the insured for payment of premiums; that credit was again extended for the payment of the last premium due before Jones' death; and that by reason of that custom and the defendant's prior acceptances of delinquent premiums, and its retention of the premium paid on August 22, 1936, without notifying the plaintiff of its refusal to accept the same, the defendant became estopped from taking advantage of the nonpayment of that premium when due.

The only provision in the policy in relation to the renewal thereof reads as follows:

"G. This policy may be renewed with the consent of the company, by the payment of the premium in advance, subject, however, to all the conditions and provisions of the policy."

That is not one of the "Standard Provisions" required in all accident and health policies, by sec. 204.31 (3), Stats. The only provision in the policy in relation to default in the payment of the premium is the "Standard Provision" required by sec. 204.31 (3) 3, Stats., and reads as follows:

"If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the company or by any of its duly authorized agents shall reinstate the policy, but only to cover loss resulting from accidental injury thereafter sustained."

Because that provision is required by statute, it is mandatory and obligatory on the insured, as well as the insurer,

and there is applicable the rule that when the legislature has declared—

"the public policy of the state to be that that which had theretofore been subject to contract between the parties shall hereafter be by certain prescribed forms and with specific conditions concerning the respective rights and duties of the parties thereto, the statutory provisions step in and control and regulate the mutual rights and obligations rather than the provisions of any contract the parties may attempt to make varying therefrom." *Williams v. Travelers Ins. Co.* 168 Wis. 456, 462, 169 N. W. 609, 169 N. W. 959.

When the legislative will is expressed in the peremptory terms of such a statute, it "is paramount and absolute, and cannot be varied or waived by the private conventions of the parties." *Whitfield v. Ætna Life Ins. Co.* 205 U. S. 489, 497, 27 Sup. Ct. 578, 580; *Berry v. Knights Templars' & Masons' Life Indemnity Co.* (C. C.) 46 Fed. 439; *Straker v. Phenix Ins. Co.* 101 Wis. 413, 77 N. W. 752; *Williams v. Travelers Ins. Co., supra; Schilbrch v. Inter-Ocean Casualty Co.* 180 Wis. 120, 192 N. W. 456; *Isaacson v. Wisconsin Casualty Asso.* 187 Wis. 25, 203 N. W. 918; *Wojtzak v. Hartland F. Mut. F. Ins. Co.* 200 Wis. 118, 227 N. W. 255. Consequently, if "default" did occur prior to July 29, 1936, by reason of the insured's failure to pay the renewal premium in advance, as required by provision "G" of the policy, then the statutory provision that "the subsequent acceptance of a premium . . . shall reinstate the policy, but only to cover loss resulting from accidental injury thereafter sustained," stepped in and controlled and regulated absolutely the mutual rights and obligations of the parties, regardless of any attempted change or waiver by any contract or custom between the parties, or any alleged estoppel because of defendant's conduct. In other words, notwithstanding any attempted change or waiver by any such means or by the insured's reliance upon the defendant's

conduct, the unambiguous terms in "Standard Provision" 3 must be held paramount and absolutely controlling. Consequently, if "default . . . in the payment of the agreed premium" occurred prior to the insured's injury on July 29, 1936, then, although acceptance of the payment on August 22 1936, would have reinstated the policy, that reinstatement would be effective "only to cover loss resulting from accidental injury thereafter sustained." That necessitates determining whether "default,"—in the sense in which that word is used in the clause, "If *default* be made in the payment of the agreed premium,"—had occurred prior to the insured's death. As there is no other policy provision as to what shall be deemed to constitute "default," the determination as to whether "default" had occurred depends upon the meaning and effect of provision "G" (quoted above) governing renewals. Under the unambiguous terms of that provision, it is clear that renewal can be effected only "by the payment of the premium *in advance*," and with the consent of the insurer. Consequently, as the payment on August 22, 1936, was not payment of the premium *in advance,* "default" had clearly occurred prior to the insured's injury unless there was a valid and effective change or waiver in respect to that requirement in provision "G" for payment in advance. Because provision "G" is not one of the "Standard Provisions" required by statute, it was not within the inhibitions of the rule precluding any change or waiver by the private conventions of the parties. But as to any alleged change, waiver, or estoppel in relation to that provision, there is applicable "Standard Provision" 2, which is in the policy in compliance with sec. 204.31 (3) 2, Stats., that,—

". . . No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the company, and such approval be indorsed hereon."

In view of that "Standard Provision," which is in turn likewise paramount and absolute, and not subject to change or waiver by the private conventions of the parties, the only manner or means by which a change or waiver could be effected in provision "G" would be by a change or waiver approved by an executive officer of the insurer, and the indorsement of his approval on the policy in compliance with "Standard Provision" 2. There is no allegation in the complaint which admits of the construction or inference that there ever was such an approval, or any indorsement thereof on the policy. Consequently, the facts alleged are insufficient to state that there was a valid and effective extension of the time prescribed in provision "G" for the payment of the renewal premium; and, in the absence of such an extension, the payment on August 22, 1936, was not made in time to avoid default in making the payment in advance required to effect a renewal on June 4, 1936; and as that default had occurred before the subsequent payment of the premium, the acceptance thereof on August 22, 1936, operated merely to reinstate the policy to cover only loss resulting from injury thereafter sustained. It follows that the facts alleged are insufficient to state a cause of action on the policy to recover for loss resulting from injury sustained on July 29, 1936.

*By the Court.*—Order reversed, and cause remanded with directions to sustain the demurrer to the complaint.

A motion for a rehearing was denied, with $25 costs, on January 11, 1938.